# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# Wheeling

**STEPHEN K. HARRIS,**

      Petitioner,

    v.                                           **CIVIL ACTION NO. 5:21-cv-52**
                                                              Judge Bailey

**R.M. WOLFE,**

      **Respondent.**

## REPORT AND RECOMMENDATION

On April 29, 2021, the *pro se* petitioner, an inmate at FCI Gilmer, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. On May 13, 2021, the petitioner paid the required $5.00 filing fee.

On May 15, 2021, the undersigned conducted a preliminary review of the file and determined that summary dismissal of the petition was not warranted at that time. Therefore, the respondent was directed to show cause why the petition should not be granted. On June 28, 2021, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment, with supporting memorandum and exhibits.

On June 29, 2021, the a Roseboro Notice in which the petitioner was advised of his right to file a response to the respondent's motion. On July 23, 2021, the petitioner filed a response with exhibits. On August 2, 2021, the respondent filed a reply. On August 19, 2021, the petitioner filed a sur-response in which he requests an evidentiary hearing.

## I. Background

1

On June 10, 1993, the petitioner was arrested by federal officials in the District of Columbia and charged with committing the D.C. Code offenses of Assault with Intent to Kill While Armed, Possession of a Firearm During a Crime of Violence or Dangerous Offense, Possession of a Prohibited Weapon, Carrying a Pistol Without a License, Possession of an Unregistered Firearm, and Unlawful Possession of Ammunition.

On January 26, 1995, the petitioner was sentenced in the Superior Court for the District of Columbia to a 58-years to 174 years aggregate term of imprisonment for the D.C. Code offenses. [Doc. 11-3]. The sentence included a mandatory minimum term of 5 years each for Counts B-F and H, to run consecutive to one another for an aggregate mandatory minimum term of 30 years. Id.

Because the petitioner is a D.C. offender, sentenced before 2000[1], he is eligible for parole. As calculated by the Bureau of Prisons Designation and Computation Center, the petitioner's parole eligibility date is currently October 11, 2037. This was calculated based on a 58-year minimum term beginning January 26, 1995, with 595 days of jail credit[2], 3,360 days of DC Institutional Good Time("DCIGT"), 10 days of D.C. Educational Good Time ("DCEGT"), and 1,620 days of credit under D.C. Code § 24-403.01a(b). [Doc. 11-2 at 2]. In addition, the petitioner is scheduled to release from BOP custody, via mandatory parole, on July 22, 2108. The scheduled date for release is based on a 174-year term of confinement beginning January 26, 1995, with 595 days of jail credit, 20,880 days of

---

[1]The sentencing Reform Act of 2000 shifted D.C. from indeterminate to determinate sentencing and abolished parole. Sentencing Reform Amendment Act of 2000, D.C. Act 13-406, 47 D.C. Reg. 7249 (codified as amended at D.C. Code § 24-403.01 (2013 & Supp. 2016)).

[2]This represents the time the petitioner spent in pre-sentence custody from June 10, 1993, the date of his state arrest, through January 25, 1995, the commencement of his sentence. [Doc. 11-2 at 2].

DCIGT, 10 days of DCEGT, and 617 days of Extra Good Time under the provisions of 18 U.S.C. § 4162.  [Id. at 3].

## II. The Pleadings

### A. The Petition

The petitioner alleges that the BOP has unlawfully computed his sentence and alleges that a lawful computation of his sentence will lead to his immediate release from prison.  In support of this allegation, the petitioner maintains that the BOP has arbitrarily calculated the allowed "Good Time" awarded under the new D.C. Emergency Act of 2020. The petitioner continues this argument by maintaining that 54 days a year are to be deducted from his mandatory minimum sentence. It would appear that the petitioner believes that he is entitled to at least four years of good time credit against his 30 year mandatory minimum, and because he has already served more than 28 years, he would be entitled to immediate release.  After exhausting his administrative remedies, the petitioner now requests that the court recalculate the added Good Time credit so as to make him eligible for release or parole.

### B. The Respondent's Motion

In the response, the respondent asserts that the petitioner misunderstands the controlling authority and has miscalculated the amount of time for which he can receive institutional good time credit.  More specifically, the respondent argues that to understand the manner in which the petitioner's sentence is calculated, one must understand the distinction between a "minimum term" and a "mandatory term."  The respondent continues by explaining that a "minimum term" is the "term imposed by the court . . . that establishes the period of parole eligibility. [Doc. 11-5 at 69]. A "mandatory minimum term" is "a term

3

under which a court cannot set a period of parole eligibility any less than prescribed for the offense." Id.  The respondent then explains that when the minimum term is greater than the mandatory minimum term, the minimum term may only receive institutional good time credits for the difference between the date mandatory term expires and the minimum term expires.  Accordingly, the respondent maintains that petitioner may receive institutional good time credit for only the final 28 years of his minimum sentence, in other words for the difference between his 58-year minimum term and the 30-year mandatory minimum term.

In conclusion, the respondent maintains that the petitioner's sentence has been calculated properly, and his petition should be dismissed.

## C. Petitioner's Response

In response, the petitioner argues that his sentence only involves a statutory 20 year mandatory minimum term of imprisonment, and not the thirty years asserted by the respondent.  The petitioner attached as an Exhibit a copy of his original judgment dated January 26, 1995. [Doc. 14-1].The petitioner further alleges that an error is found in his computation sheet which is computed from January 26, 1995.  The petitioner argues that he has been incarcerated since his arrest on June 10, 1993.  The petitioner then cites to "Emergency" law which addressed the COVID-19 pandemic crisis. The petitioner argues that under this law, he is entitled to 54 days of good-time toward the mandatory minimum term of imprisonment, and he is immediately eligible for parole.  Accordingly, the petitioner argues that the respondent has incorrectly calculated his parole eligibility date.

## D. Respondent's Reply

The respondent notes that the petitioner is incorrect, and his mandatory minimum is 30 years, not 20 years.  In addition, the respondent notes that the petitioner's claims that

he has not received credit for the time he was incarcerated from his arrest until sentencing is also incorrect because he was awarded 595 days of jail credit for the time he spent in jail from June 10, 1993 to his sentencing on January 26, 1995.  Finally, the respondent maintains that the petitioner is not eligible for parole until he completes the 58 year minimum sentence, and therefore, the mandatory minimum term of 30 years is not even a factor in the sentence calculation being challenged.

### III.  Standard of Review

#### A.  Motion to Dismiss

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations.  Walker v. True, 399 F.3d 315 (4th Cir. 2005).  Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

#### B.  Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases.  See Blackledge v. Allison, 431 U.S. 63, 80 91977).  So too, has the Fourth Circuit Court of Appeals.  Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991).  Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## IV. Analysis

The Revitalization Act provides that the BOP is responsible for computing the sentences of D.C. offenders housed in BOP facilities. D.C. ST. § 24-101(b). Moreover, such persons are "subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed." Id. at § 24-101(a). Therefore, although the BOP is responsible for computing sentences of D.C. offenders housed in its facilities, the District of Columbia continues to control the computation of such sentences.

The District of Columbia Good Time Credits Act of 1986 ("GTCA") was enacted on

April 11, 1987. D.C. ST. § 24-428 *et seq.* (1989 Repl). Prior to the GTCA, neither the District of Columbia nor the federal government allowed good time credits against minimum sentences; good time credit was allowed only against maximum sentences. Council of the District of Columbia, Report on the District of Columbia Good Time Credits Act of 1986) (Report). The GTCA changed the previous law by allowing good time credits to be applied against minimum sentences. D.C. ST. § 24-428(b). As originally written, the Act applied only to inmates housed in District facilities and not to those District offenders assigned to federal facilities.[3] However, in 1991, the Act was amended to extend the application of institutional good time credits to all D.C. Code offenders incarcerated in any prison. See Franklin v. Ridley, 635 A.22d 356 (D.C. 1993). The time credited per month depended on the length of the sentence. Good time credits of five days per month applied to a sentence of "not less than 30 days and not more than 1 year," the shortest term covered. § 24-428(a)(1). Credits of ten days per month applied to a sentence of "10 years or more," the longest term covered. § 24-428(a)(5). This credit is known as DC Institutional Good Time ("DCIGT").

In the instant case, the petitioner was sentenced to more than 10 years and has been awarded 10 days per month of DCIGT or 3,360 days.[4] This award does not appear

---

[3] D.C. ST. § 24-428(a) (1989) provided:
"Every person who is convicted of a violation of a District of Columbia ('District') criminal law in a court in the District of Columbia, imprisoned in a District Correctional facility, and who conduct is in conformity with all applicable institutional rules is entitled to institutional good tie credits in accordance with the provisions of this section."

[4] 3,360 days equate to 336 months or 28 years, which is the difference between his 30 years mandatory minimum sentence and his 58 years minimum sentence. As previously noted, the petitioner can only receive institutional good conduct time for that difference.

to be contested by the petitioner. Nor does he appear to be contesting the award of 10 days of D.C. Educational Good Time ("DCEGT").

To the extent that the petitioner argues that he has not received credit for the time of his arrest until he was sentenced, he is clearly mistaken. Although the BOP began his sentence calculation on January 26, 1995, when he was sentenced, they awarded him 595 days of jail credit for the period from June 10, 1993, the date of his arrest through January 25, 1995, the date his sentence commenced. Likewise, his argument that he is serving only a 20 years mandatory minimum sentence is equally mistaken. The petitioner's Judgment and Commitment Order clearly provides for a 5 year mandatory minimum on each of Counts B, C, D, E, F, and H, with each mandatory minimum to run consecutive.

What appears to be of primary contention is the application of DC Code 24-403.01 which became effective April 27, 2021, and provides an award of retroactive "good time credit toward the service of the defendant's sentence of up to 54 days, or more if consistent with 18 U.S.C. § 3624(b), for each year of the defendant's sentence imposed by the court, subject to determination by the Bureau of Prisons that during those years the defendant has met the conditions provided in 18 U.S.C. § 3624(b)."

For defendants serving a term of incarceration for an offense committed between June 22, 1994, and August 4, 2000, the award of good time credit shall apply to the minimum and maximum term of incarceration, including the mandatory minimum. **However**, for a defendant who is serving a term of imprisonment for an offense committed before June 22, 1994, an award of good time credit shall apply to any mandatory term of incarceration; and is not intended to modify how the defendant is awarded good time credit toward any portion of the sentence other than the mandatory minimum. Because the

petitioner was arrested on June 10, 1993, it is clear that he is serving a sentence for a crime committed before June 22, 1994, and therefore, he is not entitled to 54 days of credit against anything other than his 30 years mandatory minimum, which he has received.

At the time the most recent sentence calculation was prepared, the petitioner had been incarcerated 28 years, 3 months, and 11 days following his conviction. In addition, he had 1 year, 7 months and 18 days of prior custody credit. With the 1620 days of credit under DC ST. 24.203.01a(b)(1), the petitioner has completed his mandatory minimum sentence of 30 years. Although the petitioner is technically correct that he has served in excess of his mandatory minimum with the award of 1,620 days of credit under DC Statute 24-203.01a(b)(1), that does not make him eligible for parole.

As explained by the District of Columbia Court of Appeals:

> The Good time Credits Act, by its terms, reduces both the minimum and maximum sentences....Once the minimum sentence, less good time, is served, and inmate is eligible for parole consideration, i.e., the inmate has reached the parole eligibility date....the decision to grant or deny parole, upon eligibility, is within the discretion of the Parole Board. When the maximum sentence, less good time, has been served, an inmate must be released, i.e., the inmate has reached the statutory release date.

Murray v. Stephenson, 633 A.3d 48, 49-50 (D.C. 1993) (citations and footnotes omitted).

In this case, the petitioner received an indeterminate sentence of 58 to 174 years, which is a sentence of imprisonment to a specified minimum and maximum period of time, specifically authorized by statute, subject to termination by a parole board or other authorized agency after he has served the **minimum** term, not the mandatory minimum term. Because he will not have served his minimum term minus all possible good time, until October 11, 2037, that will be the first date he will be eligible for release.

## V. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss **[Doc. 11]** be **GRANTED**, and petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**. In addition, the undersigned further recommends that the petitioner's Motion Requesting and Evidentiary Hearing **[Doc. 16]** be **DENIED as MOOT.**

Within fourteen days after service of this Report and Recommendation, any party may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: September 15, 2021

                                         */s/ James P. Mazzone*
                                         JAMES P. MAZZONE
                                         UNITED STATES MAGISTRATE JUDGE